IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| COREY A. BURLEY, #614081 | § | |
| VS. | § | CIVIL ACTION NO. 6:17cv490 |
| LORIE DAVIS, ET AL. | § | |

<u>MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION</u>

Plaintiff Corey Burley (Burley), an inmate of the Texas Department of Criminal Justice proceeding *pro se*, filed this civil rights lawsuit under 28 U.S.C. § 1983, complaining of alleged deprivations of his constitutional rights. This Court ordered the matter be referred to the United States Magistrate Judge. This memorandum opinion concerns only Burley's motion for preliminary injunction, (Dkt. #4).

**I. Burley's Motion for Injunctive Relief**

Burley raised several claims concerning prison conditions at the Coffield Unit, particularly overcrowding and double-celling. He twice asserted that "the Plaintiff has been confined under these conditions for over thirteen years." Specifically, Burley maintained that he continues to be housed in double-cell conditions despite repeated grievances and transfer requests. He argued that he is housed in a one-man cell, but resides with another, which "continues to create a substantial risk of serious harm to develop from the incremental negative physical and psychological effects due to this close confinement."

He noted that he suffers from stress, tension, anxiety, and aggressive behavior due to overcrowding—and that it is "only a matter of time before a total breakdown." Ultimately, Burley requested that this Court order prison officials at the Coffield Unit to immediately remove him from his current housing and place him in a building within the prison "where the conditions of

1

confinement are substantially better than the double-celling, or in the alternative, place Plaintiff on single-cell housing status."

Burley requested that the Court also order Defendants not to retaliate against him for the filing of his grievances or this cause of action. Specifically, he argued that he should not have to wait for the retaliatory conduct to occur before seeking the injunction, as it is "widely known that prison officials often do retaliate against prisoners in a myriad of ways." Burley contended that he is threatened with irreparable harm due to the overcrowding and double-celling, and prison officials have the power to immediately move him to the area with better conditions.

## II. The Magistrate Judge's Report and Recommendation

After a review of the motion, the Magistrate Judge issued a Report, (Dkt. #10), recommending that Burley's motion be denied. The Magistrate Judge found that Burley had not demonstrated any of the four elements required for a preliminary injunction. First, double-celling is constitutional and overcrowding is not, by itself, a constitutional violation. Second, Burley failed to show that a substantial threat exists that irreparable harm will result if the injunction is not granted. Finally, Burley's retaliation claim is meritless because he failed to demonstrate either a specific retaliatory act or an actual constitutional right for which Burley experienced retaliation.

## III. Burley's Objections

In his objections, Burley first states that the Report ignores the fact that Burley's filed grievances, attached to his underlying complaint in this case, demonstrate his sleep deprivation. He then contends that the Report also ignores and refuses to address "the fact that Plaintiff suffers from seizures that are induced by the continued stress of his living conditions and has already caused him to suffer a [concussion] which required he be [hospitalized]." He notes that "a review

of his medical records will reveal that these seizures are becoming more frequent." Burley also argues that the Magistrate Judge refused to recognize that "it is always in the public's interest for prison officials to obey the law." Burley further requests that this Court visit the Coffield Unit to "see what Plaintiff is subjected to on a daily basis—what he has been subjected to daily for more than a decade."

Finally, he attaches his own signed affidavit, in which he further explains his seizures are purportedly stemming from his sleep deprivation and living conditions. Burley notes that he suffered a seizure on February 18, 2017, and fell from his top bunk. As a result of the seizure and subsequent fall, he suffered from a concussion and a shoulder injury. Burley explains that on the day of his seizure, he transferred cells—transferring from a cell where he apparently slept on the bottom bunk to a cell where he received top bunk. He explained that despite his transfer, "there is no safe by-policy methods or means to enter or exit the top bunk bedding area. Even after I fell, medical failed to prescribe a bottom bunk pass, and security failed to accommodate me with a safe bedding assignment. Now it's February 16, 2017, and I am still being forced to endure those cruel and unusual conditions on minimum security."

As he describes his sleep deprivation, Burley highlights that "it is most problematic to meet the 2:30 AM chow call." He explains that his housing assignment is directly in front of the dayroom and, as a result, "during the night hours I am constantly being awakened by the security vindictively and maliciously."

## IV. Discussion and Analysis

### A. *Issues not Raised in Initial Motion*

As an initial matter, generally, an issue raised for the first time in an objection to a Magistrate Judge's Report is not properly before the District Court. *See Place v. Thomas*, 61

3

Fed.App'x 120, 2003 WL 342287, *1 (5th Cir. 2003); *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992). Moreover, and importantly, a party objecting to a Magistrate Judge's Report must specifically identify those findings to which he or she objects. Frivolous, conclusory, or general objections need not be considered by the District Court. *See Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (*en banc*), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

Here, Burley never mentioned his seizure or even the word "seizure" in his motion for preliminary injunction. While Burley began his underlying complaint by explaining that he suffered a seizure on February 18, 2017, he never once articulated that his seizure stemmed from sleep deprivation. Burley attached a memorandum of law to his underlying complaint; however, again, he failed to mention his seizure.

Moreover, Burley attached several of his submitted Step 1 and Step 2 prison grievances dating back years. A review of those grievances filed since the date of his seizure demonstrate that his chief complaint is about how he was forced to sleep on the top bunk even after falling. Sleep deprivation was never mentioned in any of those grievances filed after his seizure. Accordingly, Burley's complaint regarding his seizure and sleep deprivation was never raised in his motion for preliminary injunction or his underlying complaint. As a result, he essentially raises this issue for the first time on objection and, consequently, the issue is not properly before the District Court.

However, because Burley insists that conditions at the Coffield Unit—which he argues contributes to his stress, anxiety, and sleep deprivation, and allegedly his seizure—entitle him to a preliminary injunction, the Court will address the claim as it stands.

*B. Preliminary Injunctions*

The purpose of issuing a preliminary injunction is to protect the plaintiff from irreparable injury and to preserve the district court's power to render a meaningful decision after a trial on the merits. *See Canal v. Authority of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1979). Essentially, a preliminary injunction serves to preserve the relative positions of the parties until a trial on the merits can be held, if one is necessary. *See Univ. Of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

A party seeking a preliminary injunction must establish four elements: (1) that there is a substantial likelihood the party will prevail on the merits; (2) that a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendants; and (4) that the granting of the preliminary injunction will not disserve the public interest. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012). Relief should only be granted if the party seeking relief has clearly carried the burden of persuasion as to all four elements. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

The equitable injunctive power of federal courts will not be exercised save in exceptional cases to prevent irreparable injury which is clear and imminent. *See Heath v. City of New Orleans*, 320 F.Supp. 545, 546 (E.D.La. 1970), *aff'd* 435 F.2d 1307 (5th Cir. 1971). "Irreparable harm" means an injury which cannot be adequately addressed by a monetary award." *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981). Mere speculation or conclusory allegations of an irreparable injury is insufficient. *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

However, in *Jones v. Texas Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018), plaintiff Jones—a diabetic TDCJ prisoner—alleged that he was on a special diet for his diabetes, but this diet was discontinued during lockdowns despite repeated complaints. Jones maintained that his blood sugar rose above 500, considerably above normal, and he suffered a heart attack during one of the lockdowns.

Jones sought injunctive relief, which was denied by the district court. On appeal, the Fifth Circuit stated that in order to establish a likelihood of success on the merits of his Eighth Amendment claim, Jones would have to show a likelihood that substituting high-sugar meals for his prescribed diet amounted to deliberate indifference to his serious medical needs. Jones's allegations were specific, concrete, and direct. Under the facts presented, the Fifth Circuit determined that Jones's pleadings alleged a pattern of knowing interference with the prescribed care for his diabetes, despite multiple complaints including an official grievance. These claims, the Fifth Circuit found, were adequate to state a claim for deliberate indifference to his serious medical needs, thereby giving Jones a sufficient likelihood of success on the merits.

The Fifth Circuit also determined that Jones's allegations were sufficient to show a substantial threat of irreparable harm and that the District Court could not simply assume that providing necessary medical care to a prisoner would be too much of an inconvenience to prison authorities. Therefore, the Fifth Circuit reversed the court's denial of his motion for injunctive relief—remanding the case for further proceedings.

Here, however, the Magistrate Judge properly and correctly recommended that Burley's motion for a preliminary injunction be denied. First, throughout his motion for a preliminary injunction and his underlying complaint, Burley asserts that he has been confined under the prison conditions to which he complaints for at least thirteen years. Even in his

objections, Burley asks the Court to visit the Coffield Unit in order to witness the conditions that he has been subjected to for over a decade. Accepting this as true, any irreparable harm stemming from the prison conditions as he describes it is clearly not imminent. Unlike Jones, who needed the injunction because of the immediacy of his diabetic needs during a lockdown, Burley readily admits that his circumstances have been ongoing for over a decade. Therefore, given the lack of immediacy here, Burley fails to show that a substantial threat of irreparable harm exists if the injunction is not granted. Accordingly, the Magistrate Judge's recommendation was correct.

To the extent that Burley insists that his previous seizure and subsequent fall render the threat of irreparable harm imminent and urgent, his claim fails. A prisoner's self-diagnosis of a serious medical condition is insufficient to show imminent danger without medical evidence verifying that the condition exists. *See Aswegan v. Henry*, 49 F.3d 461, 465 (8th Cir. 1995); *accord Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion); *McClure v. Foster*, civil action no. 5:10cv78, 2011 WL 665819 (E.D. Tex., January 7, 2011), *Report adopted at* 2011 WL 941442 (E.D. Tex., February 16, 2011), *aff'd* 465 F.App'x 373, 2012 WL 1059408 (5th Cir. March 29, 2012). Here, Burley's self-diagnosis—namely that his seizure stems from sleep deprivation as well as the stress and anxiety of living under prison conditions at the Coffield Unit—is insufficient to show imminent danger, absent medical records.

While Burley failed to mention his seizure in his motion for a preliminary injunction, he notes in his complaint that the stress, anxiety, and sleep deprivation stemming from the purported unconstitutional conditions at the Coffield Unit place him at risk for additional future harm. However, Burley fails to connect conditions at the prison to his seizure. In his filed prison

7

grievances attached to his underlying complaint in this case, Burley does not contend that his seizure and subsequent fall stemmed from the effects of prison conditions. Rather, his grievances demonstrate his complaint about being assigned to a top bunk after being hospitalized—specifically characterizing the issue as "negligence."

Furthermore, in all of his grievances submitted after his seizure incident—provided to the Court thus far—he never mentions sleep deprivation, anxiety, or stress concerning prison conditions when addressing his seizure. Instead, his grievances evince mere dissatisfaction with the prison's bunk assignment protocol. Similarly, in his affidavit attached to his objections, Burley continues to complain that prison officials did not assign him a bottom bunk, which, he contends, shows deliberate indifference to his serious medical issues. In other words, Burley's deliberate indifference claim rests more with his top bunk assignment rather than double-celling, overcrowding, and sleep deprivation.

Additionally, a review of those grievances demonstrates that prison medical officials cleared Burley for a top bunk even after his hospitalization. In this way, any claim that the effects of double-celling/overcrowding—which allegedly contribute to Burley's stress, anxiety, sleep deprivation, and, ultimately, his seizure—is speculative, conclusory, and far too remote to warrant a preliminary injunction. Given that his attempt to connect his seizure to the effects of the prison conditions is speculative and he repeatedly insists that the unconstitutional prison conditions have been ongoing for over a decade, the Magistrate Judge correctly found that Burley has not demonstrated that a substantial threat of irreparable harm exists if the injunction is not granted.

As to his final objection, Burley argues that "it is always in the public's best interest for prison officials to obey the law." However, because Burley failed to show that a substantial threat

of irreparable harm exists if the injunction is not granted—a required element before a preliminary injunction can be granted—the Court declines to address the remaining elements.

**V. Conclusion**

As the Magistrate Judge found, Burley has not demonstrated that a substantial threat exists that irreparable harm will result if the injunction is not granted. He insists that he has been subjected to these prison conditions of over a decade.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the United States Magistrate Judge is correct and the Plaintiff's objections are without merit. Accordingly, it is

**ORDERED** that Plaintiff's objections, (Dkt. #12), are overruled and the Report of the Magistrate Judge is **ADOPTED**. Additionally, it is

**ORDERED** that Plaintiff's motion for a preliminary injunction, (Dkt. #4), is **DENIED**.

So **ORDERED** and **SIGNED** this **6** day of **March, 2018.**

_____
Ron Clark, United States District Judge